# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD LEI, Individually and on Behalf of All Others Similarly Situated, | )<br>)<br>)<br>) Civil Action No. _____<br>) |
| Plaintiff, | )<br>)<br>) **CLASS ACTION COMPLAINT FOR** |
| v. | ) **BREACH OF FIDUCIARY DUTIES**<br>) **AND VIOLATIONS OF SECTIONS** |
| PHH CORPORATION, JANE D. CARLIN, ROBERT B. CROWL, JAMES O. EGAN, JAMES C. NEUHAUSER, CHARLES P. PIZZI, KEVIN STEIN, and CARROL R. WETZEL, JR. | ) **14(a) AND 20(a) OF THE**<br>) **SECURITIES EXCHANGE ACT OF**<br>) **1934**<br>)<br>) **JURY TRIAL DEMAND** |
| Defendants. | )<br>) |

Plaintiff Edward Lei ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.    Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of PHH Corporation ("PHH" or the "Company"), against PHH and the Company's Board of Directors (the "Board" or the "Individual Defendants) for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Ocwen Financial Corporation ("Parent") and POMS Corp. (the "Merger Sub" and collectively with Parent, "Ocwen") as a result of an unfair process for an unfair price, and to enjoin the stockholder vote on a proposed all-cash transaction valued at approximately $360 million (the "Proposed Transaction").

2.    The terms of the Proposed Transaction were memorialized in a February 27, 2018, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger

Agreement, PHH will become an indirect wholly-owned subsidiary of Ocwen, and PHH shareholders will receive $11.00 in cash for each share of PHH common stock they own.

3.     Thereafter, on April 6, 2018, PHH filed a Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes a series of blunders by the PHH Board leading up to and during the sales process that caused the Company to hemorrhage value and necessarily undercut the entire purpose of a properly run sales process, namely to maximize value for public stockholders.

5.     The Board caused PHH to bounce back and forth between disparate strategies, considering and/or executing mergers, liquidation, sale of assets, and other strategic alternatives throughout and leading up to the process that failed to maximize shareholder value and was coupled with stockholder outcry and a precipitous drop in stock price.

6.     Compounding the issue, after the Board determined to settle on a strategic transaction as the proper way to move forward, they failed to institute a proper market check for interested third parties.

7.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits not available to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

8.     As such, Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues PHH and is the result of a flawed sales process.

9.      Further, in violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on April 6, 2018 with the United States Securities and Exchange Commission ("SEC") in an effort to solicit stockholders to vote their PHH shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient and deprives PHH stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction.  As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for PHH, provided by PHH to the Company's financial advisor Credit Suisse Securities (USA) LLC ("Credit Suisse") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Credit Suisse.

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

11.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a PHH stockholder.

12.     Defendant PHH, through its subsidiaries, provides outsourced mortgage banking services to financial institutions and real estate brokers in the United States.  PHH is organized under the laws of the State of Maryland and has its principal place of business at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054.  Shares of PHH common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "PHH."

13.     Defendant Jane D. Carlin ("Carlin") has been a Director of the Company at all relevant times.  In addition, Carlin serves as the Chair of the Board's Corporate Governance Committee and as a member on the Board's Audit Committee.

CLASS ACTION COMPLAINT

14. Defendant Robert B. Crowl ("Crowl") has been a director of the Company at all relevant times. In addition, Crowl serves as the President and Chief Executive Officer ("CEO") of PHH.

15. Defendant James O. Egan ("Egan") has been a director of the Company at all relevant times. In addition, Egan serves as a member of the Board's Audit Committee and is designated as a "financial expert" by the Board.

16. Defendant James C. Neuhauser ("Neuhauser") has been a director of the Company at all relevant times. In addition, Neuhauser serves as a member on the Board's Human Capital and Compensation Committee.

17. Defendant Charles P. Pizzi ("Pizzi") has been a director of the Company at all relevant times. In addition, Pizzi serves as the Chair of the Board's Human Capital and Compensation Committee and as a member on the Board's Corporate Governance Committee.

18. Defendant Kevin Stein ("Stein") has been a director of the Company at all relevant times. In addition, Stein serves as a member on the Board's Corporate Governance and Human Capital and Compensation Committees.

19. Defendant Carroll R. Wetzel, Jr. ("Wetzel") has been a director of the Company at all relevant times. In addition, Wetzel serves as the Chair of the Board's Audit Committee, and as a member on the Board's and Human Capital and Compensation Committee.

20. Defendants Carlin, Crowl, Egan, Neuhauser, Pizzi, Stein, and Wetzel identified in ¶¶ 13 - 19 are collectively referred to as the "Individual Defendants."

21. Non-Defendant Parent is a financial services holding company that engages in the servicing and origination of mortgage loans in the United States. Parent is a corporation organized under the laws of the State of Florida and has its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409. Parent common stock is traded on the NYSE under the ticker symbol "OCN."

22. Non-Defendant Merger Sub is a Maryland corporation and a wholly owned subsidiary of Parent, and can be served care of parent.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because PHH is headquartered in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**CLASS ACTION ALLEGATIONS**

26.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of PHH common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

27.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of February 22, 2018, there were more than 32 million common shares of PHH stock outstanding.  The actual number of public stockholders of PHH will be ascertained through discovery;

b.    There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.    Whether Defendants have violated the federal securities laws;

CLASS ACTION COMPLAINT

ii. Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Proxy; and

iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f. Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

28.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with PHH and owe the Company the duties of due care, loyalty, and good faith.

CLASS ACTION COMPLAINT

29.    By virtue of their positions as directors and/or officers of PHH, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause PHH to engage in the practices complained of herein.

30.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

    a.  act with the requisite diligence and due care that is reasonable under the circumstances;

    b.  act in the best interest of the company;

    c.  use reasonable means to obtain material information relating to a given action or decision;

    d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

    e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

    f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

31.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of PHH, are obligated to refrain from:

    a.    participating in any transaction where the directors' or officers' loyalties are divided;

    b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

CLASS ACTION COMPLAINT

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

32.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to PHH, Plaintiff and the other public stockholders of PHH, including their duties of loyalty, good faith, and due care.

33.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their PHH common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

34.    PHH through its subsidiaries, provides outsourced mortgage banking services to financial institutions and real estate brokers in the United States.  The company operates through two segments, Mortgage Production and Mortgage Servicing.

35.    The Mortgage Production segment provides private label mortgage services to financial institutions and real estate brokers; and originates and sells mortgage loans.  The Mortgage Servicing segment services mortgage loans and acts as a subservicer for clients that own the underlying servicing rights; collects loan payments; remits principal and interest payments to investors; manages escrow funds for the payment of mortgage-related expenses, such as taxes and insurance; and performs loss mitigation activities on behalf of investors.

36.    The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a February 22, 2018 press release announcing its 2017 Q4 financial results, the Company noted such financial highlights as an increase in net revue year-on-year from $72 million to $109 million.

37.    These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by PHH.  For example, in a November 7, 2017 press release announcing the Company's 2017 Q3 financial results, PHH reported such positive results as the

CLASS ACTION COMPLAINT

Company's continued estimates of potential excess cash of up to $655 million, including $301 million of share repurchases completed year-to-date at the time of the press release.

38.    Speaking on these results, and indicating the probability of future growth, Defendant Crowley stated, "We believe we are well-positioned to capture market opportunities due to the quality of our servicing and portfolio retention platforms, robust compliance framework, and available capacity."

39.    Clearly, based upon these positive financial results, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

40.    Additionally, despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused PHH to enter into the all-cash Proposed Transaction which will freeze out Plaintiff and all other public stockholders of the Company, foreclosing any ability for them to realize the full return of their investments.

***The Flawed Sales Process***

41.    As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was severely compromised by the Board's strategic plans causing the Company to hemorrhage value throughout the process.

42.    First and foremost, the Board breached its fiduciary duties leading up to and throughout the sales process by piecemeal selling off parts of the Company; for example, selling off PHH's fleet business in July 2014 for $1.4 billion and entering into several deals in the latter half of 2016 to sell off its portfolio of Mortgage Servicing Rights ("MSRs").  In addition, the Company also sold certain assets and liabilities of PHH Home Loans, a joint venture PHH participated in with another entity, to a third party, and thereafter liquidated the remaining assets.

43.    These divestitures had the effect of reducing the overall value of the Company and making it less attractive to future bidders of the Company, hamstringing any future plans the Company may have had to effectuate a robust sales process with multiple offers.

44.     Despite the fact that the Company seemed to be on track to liquidate its assets and return the capital to its stockholders as part of a dissolution, the Board abruptly determined, after this process was underway, to reverse course and continue as a standalone entity - a "capital-light business" compromised of subservicing and portfolio retention (the "PHH 2.0 Plan").

45.     On February 15, 2017, the Company announcement that it was executing the PHH 2.0 Plan.  It produced immediate and severe negative reactions amongst stockholders and others in the market, many of whom expressed skepticism regarding the possibility of any sort of long term success with such a plan.  The criticism proved to be accurate as the Company continued to struggle financially under this new plan as pushed through by the Board.

46.     The PHH 2.0 Plan proved to be a significant stumbling block to financial success. Notably, two financial reporting announcements made by PHH and recounted in the Preliminary Proxy track abandonment of bids by third parties or significant reductions in prices offered by those parties.  These setbacks, which can be laid directly at the feet of the Board and the PHH 2.0 Plan, led to the Company being a less attractive acquisition target for any potential bidding wars throughout the sales process.

47.     In April 2017, Ocwen submitted a bid to acquire the Company for $12.78 per share or $685 million in aggregate, later increased to $14.06 per share or $754 million in aggregate. Despite Ocwen's clear interest in PHH, evidenced by its willingness to increase its bid shortly after receiving feedback from PHH's financial advisor, and the severe negative feedback related to PHH's then-current strategic plan, the PHH Board inexplicably determined that there was too much regulatory risk related pursuing such a transaction in April 2017, and broke off talks with Ocwen.  Specifically, the Board cited to risks relating to actions filed by state mortgage and banking regulatory agencies as well as an action pending in the D.C. Circuit Court filed by the Consumer Financial Protection Bureau (the "CFPB").

48.     In the same time period, a financial third party ("Party A") expressed an interest in the Company, but shortly later broke off communications.  The Preliminary Proxy fails to disclose what level these talks progressed to, or if the Board attempted to play Ocwen and Party A's interest off each other to drive up any potential bids.

49.     Company A renewed its interest in June 2017.  In addition, two other transactional third parties, ("Company "B" and "Company "C") contacted the Company to discuss a potential strategic transaction.  The PHH Board also reached out to Ocwen at this time.  Later in the process, a fourth entity ("Company D") expressed interest.  The Preliminary Proxy fails to disclose further details about Company B, Company C, or Company D's involvement in the process, other than the initial contact with PHH or if such entities entered into any non-disclosure agreements ("NDAs") with the Company, or said NDAs' terms.

50.     Despite this contact by interested third parties in the summer and fall of 2017, the Company Board did not conduct another market check at this time, despite the fact that the most recent market check had been conducted more than one-year prior.  In addition, the Company had sold significant assets since its previous market checks, and a renewed effort may have garnered attention from different potentially interested third parties.

51.     Eventually, Ocwen would submit a bid in October 23, 2017 valuing the Company at $13.10 per share or $426 million in aggregate.

52.     It is notable that when re-engaging with Ocwen in fall and winter of 2017 and 2018, the Preliminary Proxy does not indicate what specific changes to the regulatory risks had taken place that the PHH Board was concerned with in April 2017.  Rather, the Preliminary Proxy only indicates nebulously that "each had made progress on addressing their respective regulatory matters."  The lack of specificity here is notable given that perhaps the most significant regulatory action, the CFPB Action, would not be resolved until sometime *after* negotiations with Ocwen had already begun.  It therefore appears that, judging by the material available in the Preliminary Proxy, the only difference in the posture between the two entities at this later point was that Ocwen now viewed the Company as significantly less valuable.  It is apparent that the Board's caution in April had cost it significant value in its dealings with Ocwen half a year later.

53.     Ocwen's bid in October 23, 2017 contained several provisions relating to the pending CFPB Action, most notably, that $109 million of the merger consideration would be payable to PHH stockholders in the form of a contingent value right ("CVR") which would be conditioned on the completion of all of the Company's previously announced asset sales and was

CLASS ACTION COMPLAINT

designed by Ocwen to transfer any potential liability from a negative decision in the CFPB Action to PHH and its stockholders. However, Ocwen agreed to amend its bid to remove the CVR, after a January 31, 2018 decision by the United States Court of Appeals for the District of Columbia Circuit vacated a lower court's decision in the CFPB action that had produced PHH's $109 million liability.

54.    Ocwen's final bid, submitted on February 16, 2018, reflected a total valuation of the Proposed Transaction at $360 million in cash with no CVR. Notably this valuation was nearly $40 million lower than the previous Ocwen bid, but the Preliminary Proxy does not disclose the basis for the reduced valuation.

55.    Moreover, the Preliminary Proxy indicates throughout the sales process, the Board failed to implement a proper market check or attempt to play interested parties off one another to drive up the deal price.

56.    Moreover, the Preliminary Proxy is unclear as to the nature of specific confidentiality and/or non-disclosure agreements PHH entered into with various third parties, including Ocwen, throughout the sales process, if any such agreements were different from one another, the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in those agreements, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

***The Proposed Transaction***

57.    On February 27, 2018, PHH and Ocwen issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

**Mount Laurel, NJ — February 27, 2018 —** PHH Corporation (NYSE: PHH) ("PHH" or the "Company") today announced that it has entered into a definitive agreement in which Ocwen Financial Corporation (NYSE: OCN) ("Ocwen") will acquire all of the Company's outstanding shares of common stock in an all cash transaction valued at $360 million, or $11.00 per fully-diluted share, representing a premium of 24% over the closing price of PHH's common stock of $8.84 on February 26, 2018. As part of the transaction, Ocwen will assume $119 million of PHH's outstanding unsecured debt.

Robert B. Crowl, President and Chief Executive Officer of PHH Corporation, said, "We are pleased to have reached an agreement with Ocwen for the sale of our Company. This decision follows a comprehensive assessment of the risks and

opportunities associated with operating the business and the strategic alternatives available to us.  The Board and management believe the sale of the Company to Ocwen represents the best opportunity to maximize shareholder value."

Ron Faris, President and Chief Executive Officer of Ocwen, commented, "The combination of Ocwen and PHH will result in a strong non-bank mortgage servicer with a robust servicing capability. Ocwen will significantly benefit from PHH's experienced workforce and their expertise on the MSP servicing platform. We look forward to the opportunity to provide our industry leading capabilities to PHH's customers and servicing clients."

Subject to the satisfaction of various closing conditions, including regulatory and shareholder approvals, the transaction is targeted to close in the third or fourth quarter of 2018.  The agreement may be terminated by Ocwen if, among other things, the Company's unrestricted cash or net worth decline below certain threshold amounts.  Following closing, shares of PHH common stock will no longer be listed on the New York Stock Exchange.

Credit Suisse served as financial advisor and Jones Day served as legal counsel to PHH Corporation on the transaction, and Latham & Watkins served as legal counsel to the Board of PHH Corporation.

### The Inadequate Merger Consideration

58.    Significantly, the Company's financial prospects and opportunities for future growth, and synergies with Ocwen establish the inadequacy of the merger consideration.

59.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements and increases in the net revenues and cash position of the Company in recent years.

60.    For example, financial analysts at Keefe, Bruyette & Woods valued the Company as high as $12.00 per share only two months before the announcement of the Proposed Transaction.

61.    Moreover, the Company's stock was trading at $11.39 per share, higher than the consideration offered in the Proposed Transaction, as recent as December 21, 2017, less than two months before the announcement of the merger.

62.    Moreover, the Company has traded as high as $14.29 per share within a six- month period before the announcement of the Proposed Transaction, and as high as $15.00 per share

CLASS ACTION COMPLAINT

1    within the last year.  Such prices represent values *more than 29.90% and 36.36%, respectively*,

2    greater than the Proposed Transaction.

3          63.    Additionally, PHH's future success is extremely likely, given the consistent

4    increases in its cash on hand, and its steady achievement of financial milestones associated with

5    its net revenue.  Obviously, the opportunity to invest in such a company on the rise is a great coup

6    for Ocwen, however it undercuts the investment of Plaintiff and all other public stockholders.

7          64.    Finally, the Proposed Transaction represents a significant synergistic benefit to

8    Ocwen, which operates in the same industry as PHH, and will use the new assets, and brand capital

9    to bolster its own position in the market.  Specifically, Ron Faris, President and Chief Executive

10   Officer of Ocwen, commented, "The combination of Ocwen and PHH will result in a strong non-

11   bank mortgage servicer with a robust servicing capability."

12         65.    Clearly, while the deal will be beneficial to Ocwen, it comes at great expense to

13   Plaintiff and other public stockholders of the Company.

14         66.    Moreover, post-closure, Ocwen stockholders will be frozen out of their ownership

15   interest in the Company, and will not receive the expected future benefits of their investments as

16   the Company continues to perform well.

17         67.    It is clear from these statements and the facts set forth herein that this deal is

18   designed to maximize benefits for Ocwen at the expense of PHH stockholders, which clearly

19   indicates that PHH stockholders were not an overriding concern in the formation of the Proposed

20   Transaction.

21   ***Preclusive Deal Mechanisms***

22         68.    The Merger Agreement contains certain provisions that unduly benefit Ocwen by

23   making an alternative transaction either prohibitively expensive or otherwise impossible.

24   Significantly, the Merger Agreement contains a termination fee provision that will make it far less

25   likely that a third-party bidder will attempt to submit a bid.  Notably such a provision requires that

26   PHH to pay up to $12.6 million to Ocwen under these circumstances if the Merger Agreement is

27   terminated under certain circumstances.  Moreover, under one circumstance, PHH must pay this

28   termination fee even if it consummates any competing Acquisition Proposal (as defined in the

- 14 -

1    Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The

2    termination fee will make the Company that much more expensive to acquire for potential

3    purchasers.  The termination fee in combination with other preclusive deal protection devices will

4    all but ensure that no competing offer will be forthcoming.

5        69.    The Merger Agreement also contains a "No Solicitation" provision that restricts

6    PHH from considering alternative acquisition proposals by, *inter alia*, constraining PHH's ability

7    to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the

8    provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or

9    inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide

10   *"Company Takeover Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior*

11   *Company Proposal*" as defined in the Merger Agreement.

12       70.    Moreover, the Agreement further reduces the possibility of a topping offer from an

13   unsolicited purchaser.  Here, the Individual Defendants agreed to provide Ocwen information in

14   order to match any other offer, thus providing Ocwen's access to the unsolicited bidder's financial

15   information and giving Ocwen the ability to top the superior offer.  Thus, a rival bidder is not

16   likely to emerge with the cards stacked so much in favor of Ocwen.

17       71.    These provisions, individually and collectively, materially and improperly impede

18   the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

19   pursuing other reasonable and more valuable proposals and alternatives in the best interests of the

20   Company and its public stockholders.

21       72.    Accordingly, the Company's true value is compromised by the consideration

22   offered in the Proposed Transaction.

23   ***Potential Conflicts of Interest***

24       73.    The sales process as indicated in the Preliminary Proxy leading up to the Proposed

25   Transaction indicates serious flaws in the supposed unbiased nature of the decision to enter into

26   the Proposed Transaction.

27       74.    Certain insiders stand to receive massive financial benefits as a result of the

28   Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently

CLASS ACTION COMPLAINT

own large, illiquid portions of Company stock that will be exchanged for significant consideration, totaling millions of dollars in some cases.

75.    Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, will be canceled and converted into the right to the merger consideration.  Certain of the Individual Defendants and Company insiders own hundreds of thousands of Company options for which they will receive consideration.

76.    Moreover, certain employment agreements with PHH executives, including certain directors, are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by PHH's common stockholders.

77.    The cash and equity received by certain Company insiders, including certain of the Individual Defendants discussed above, is listed below as follows:

| Named Executive Officer | Cash ($)(3) | Equity ($)(4) | Perquisites/ Benefits ($)(5) | Total ($) |
|---|---|---|---|---|
| Robert B. Crowl, Chief Executive Officer | 2,224,384 | 456,126 | 42,837 | 2,723,347 |
| Glen A. Messina, former Chief Executive Officer(1) | — | 2,368,421 | — | 2,368,421 |
| Michael R. Bogansky, Chief Financial Officer | 874,295 | 223,850 | 42,837 | 1,140,982 |
| Stephen P. Staid, Senior Vice President, Servicing(2) | 825,093 | — | — | 825,093 |
| William F. Brown, former General Counsel and Corporate Secretary(1) | — | 277,189 | — | 277,189 |
| Leith W. Kaplan, former Chief Risk and Compliance Officer(1) | — | 495,429 | — | 495,429 |
| Kathryn M. Ruggieri, former Chief Human Resources Officer(1) | — | 298,936 | — | 298,936 |

78.    It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a sale.

79.    Thus, while the Proposed Transaction is not in the best interests of PHH stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy***

80.    On April 6, 2018, PHH filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

CLASS ACTION COMPLAINT

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

81.     Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular:

    a.  The Preliminary Proxy fails to disclose sufficient information regarding the number and nature of all confidentiality agreements entered into between PHH and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid;

    b.  The Preliminary Proxy fails to disclose the specific reasoning for the price drop between Ocwen's December 11, 2017 and February 12, 2018 bids;

    c.  The Preliminary Proxy fails to disclose the specific reasoning for the failure to perform a market check for potentially interested third parties after it became clear that the Board was interested in pursuing potential strategic alternatives in April 2017;

    d.  The Preliminary Proxy fails to disclose the reason it continued to use Credit Suisse as its financial advisor when Credit Suisse had advised the Company on the failed strategic transactions that played a role in the lower valuation of the Company and Credit Suisse had an ongoing relationship with Ocwen for which it had been paid at least $6.5 million in the previous 2 years;

    e.  The Preliminary Proxy fails to disclose the full amount of fees it received from Ocwen in the two years preceding the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning PHH's Financial Projections*

82.     The Preliminary Proxy fails to provide material information concerning financial projections provided by PHH's management and relied upon by Credit Suisse in its analyses.  The Preliminary Proxy discloses management-prepared financial projections for the Company which

CLASS ACTION COMPLAINT

are materially misleading.  The Preliminary Proxy indicates that in connection with the rendering of Credit Suisse's fairness opinion, Credit Suisse, "…reviewed certain other information relating to PHH provided to or discussed with Credit Suisse by the management of PHH, including financial forecasts and estimates relating to PHH provided to or discussed with Credit Suisse by the management of PHH…"  Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that PHH's management provided to the Board and Credit Suisse.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

83.    The Preliminary Proxy fails to provide material information concerning the financial projections prepared by PHH management.  Specifically, the Preliminary Proxy fails to disclose the material line items for the following metrics:

        i.    The line items used to calculate Total Revenue, including:

                1.    Revenue from origination and other loan fees;

                2.    Revenue from gain on loans held for sale, net;

                3.    Revenue from loan servicing income, net;

                4.    Revenue from net interest expense;

                5.    Revenue from any other income

        ii.    Net Revenue;

        iii.    Total Expenses;

        iv.    Net Income attributable to PHH Corporation;

        v.    Basic Earnings per share attributable to PHH Corporation;

        vi.    Diluted earnings per share attributable to PHH Corporation;

        vii.    Net interest expense;

        viii.    Income before taxes;

        ix.    Taxes;

1        x.  Adjusted EBITDA;

2        xi.  Depreciation and Amortization;

3        xii.  Stock-based compensation;

4        xiii.  Capital Expenditures;

5        xiv.  Changes in working capital; and

6        xv.  Unlevered free cash flows.

7     84.  This information is necessary to provide Company stockholders a complete and

8 accurate picture of the sales process and its fairness.  Without this information, stockholders were

9 not fully informed as to Defendants' actions, including those that may have been taken in bad faith,

10 and cannot fairly assess the process.

11     85.  Without accurate projection data presented in the Preliminary Proxy, Plaintiff and

12 other stockholders of PHH are unable to properly evaluate the Company's true worth, the accuracy

13 of Credit Suisse's financial analyses, or make an informed decision whether to vote their Company

14 stock in favor of the Proposed Transaction.

15     *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

16     *Credit Suisse*

17     86.  In the Preliminary Proxy, Credit Suisse describes its respective fairness opinion and

18 the various valuation analyses performed to render such opinion.  However, the descriptions fail

19 to include necessary underlying data, support for conclusions, or the existence of, or basis for,

20 underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

21 valuations or evaluate the fairness opinions.

22     87.  With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy

23 fails to disclose the following:

24      a.  The specific enterprise value and equity value for the compared companies and

25       PHH on a standalone basis;

26      b.  The reasoning for only including two comparable companies, one of which was

27       Ocwen and the other of which is involved in a separate merger transaction in

28       which it is a target company; and

CLASS ACTION COMPLAINT

c.  the specific inputs and assumptions used to calculate the tangible book value per share multiples of 0.50x to 0.80x applied to the calculation of PHH's tangible book value per share.

88.    With respect to the *Dividend Discount Analysis*, the Preliminary Proxy fails to disclose the following:

a.  the specific inputs and assumptions used to calculate the discount rate range of 8.5% to 16.5% applied to the calculation of PHH's present value of excess cash;

b.  the specific inputs and assumptions used to calculate the tangible book value multiples of 0.50x to 1.10x applied to the calculation of the implied terminal values of PHH's continuing operations; and

c.  the specific inputs and assumptions used to calculate the discount range rates of 13.5% to 21.0% applied to the calculation of the implied terminal values of PHH's continuing operations.

89.    In addition, given that Preliminary Proxy makes clear that the Company "spent a significant amount of time" evaluating a "liquidation scenario," the Company should disclose any such analysis performed, by Credit Suisse or otherwise, or the reasons why it was not performed.

90.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

91.    Without the omitted information identified above, PHH's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, PHH's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

CLASS ACTION COMPLAINT

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**<u>(Against the Individual Defendants)</u>**

92.    Plaintiff repeats all previous allegations as if set forth in full herein.

93.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

94.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in PHH.

95.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of PHH by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of PHH to its public stockholders.

96.    Indeed, Defendants have accepted an offer to sell PHH at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

97.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

98.    The Individual Defendants dominate and control the business and corporate affairs of PHH, and are in possession of private corporate information concerning PHH's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of PHH which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

99.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

CLASS ACTION COMPLAINT

100.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of PHH's assets and have been and will be prevented from obtaining a fair price for their common stock.

101.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

102.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Violations of Section 14(a) of the Exchange Act

### <u>(Against All Defendants)</u>

103.    Plaintiff repeats all previous allegations as if set forth in full herein.

104.    Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

105.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78 of this title.

106.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

CLASS ACTION COMPLAINT

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

107.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

108.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

109.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

110.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

CLASS ACTION COMPLAINT

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

111.    Plaintiff repeats all previous allegations as if set forth in full herein.

112.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

113.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

114.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of PHH's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed

from the Company's stockholders and that the Preliminary Proxy was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

115.    The Individual Defendants acted as controlling persons of PHH within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause PHH to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled PHH and all of its employees.  As alleged above, PHH is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for PHH and obtain a transaction which is in the best interests of PHH and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

CLASS ACTION COMPLAINT

1    H.    Granting such other and further relief as this Court may deem just and proper.

2    **DEMAND FOR JURY TRIAL**

3    Plaintiff hereby demands a jury on all issues which can be heard by a jury.

4

5    Dated: April 17, 2018                        BRODSKY & SMITH, LLC

6                                        By:    */s/ Evan J. Smith*
                                               Evan J. Smith
7                                              esmith@brodskysmith.com
                                               Marc L. Ackerman
8                                              mackerman@brodskysmith.com
                                               1040 Kings Highway N., Ste. 650
9                                              Cherry Hill, NJ 08034
                                               Tel.:   (856) 795-7250
10                                             Fax:    (856) 795-1799

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT